OPINION
Appellant Neal Lander, Jr. appeals from the decision of the trial court overruling his motion to suppress. Lander was indicted on two counts of carrying a concealed weapon, one count of knowingly possessing a dangerous ordnance, and two counts of possessing a firearm under a disability. Subsequently, Lander filed a motion to suppress all evidence discovered during the stop of his vehicle. A hearing was held on the motion on June 2, 1998. The following day, the trial court overruled Lander's motion to suppress. Lander plead no contest to all charges and was sentenced to two twelve month sentences and one year mandatory incarceration on the firearm specification. He appeals the judgment of the trial court raising the following assignment of error:
 THE TRIAL COURT ERRED IN FAILING TO SUSTAIN MR. LANDER'S MOTION TO SUPPRESS.
At the hearing on the motion to suppress, Officer Huber, Officer Bergman and Lander all testified. Officer Huber testified that he was proceeding eastbound on West Third Street when he observed Lander at the stop light on Elmhurst at West Third. He noticed Lander because he appeared to be stopped to turn left on West Third, but then changed his position and made a right turn onto West Third. Finding this suspicious, Officer Huber made a u-turn to begin following Lander.
Shortly after making his u-turn, Officer Huber witnessed Lander make a lawful right turn onto Whitmore Avenue. Lander was approximately a block to a block and a half in front of Officer Huber. Additionally, Officer Huber testified that he was proceeding at forty to forty-five m.p.h. and Lander was still pulling away from him. However, he did not have a radar device so he was unable to ascertain Lander's exact speed. When Officer Huber made his right turn onto Whitmore, he witnessed Lander make a right turn onto Midway without stopping at the stop sign. The testimony is not clear as to the exact time, but at some point between the u-turn and this point, Officer Huber radioed in for back up because he believed Lander was attempting to elude him.
Soon after Lander turned right onto Midway, Officer Huber temporarily lost sight of the vehicle due to rise on the road. However, he claims that he was in radio contact with Officers Bergman and Goodwill who had just gained sight of him traveling at "a high rate of speed" down Midway. These officers then witnessed him turn right onto Almond without signaling. At this time, Officer Bergman activated his lights to pull over Lander. Subsequently, Lander turned right onto Friden and then into the driveway of a private residence. Officer Bergman testified that he intended to pull Lander over even before he witnessed the failure to signal violation because Officer Huber had informed him of the stop sign violation over the radio. Officer Huber testified that he intended to pull over Lander when he began to speed away from him on Whitmore.
After Lander was stopped, Officer Bergman approached the driver's side of his vehicle and Officer Goodwill approached the passenger side. Soon after informing Lander of his traffic violations, Officer Goodwill indicated to Officer Bergman that he saw what appeared to be the barrel of a gun sticking out from under the seat. Immediately, Officer Bergman asked Lander to put his hands in the air and step out of the vehicle. Lander complied. In stepping out of the vehicle, a hard object brushed up against Officer Bergman's leg. When he looked down, he saw a gun inside Lander's coat which appeared to be strapped to his body. Officer Bergman grabbed the gun and yelled to one of the other officers to handcuff Lander. By this time, Officer Huber had arrived on the scene and he proceeded to handcuff Lander. Subsequently, Officer Bergman asked Lander if there were any more weapons in the car, to which Lander replied there was one under the seat. Officer Huber removed this weapon from the vehicle. Lander was arrested and transported to jail by Officer Huber.
Lander denies that he committed any of the traffic violations testified to by the officers. He stated that he saw Officer Huber after he had made his right turn onto West Third. Then Lander witnessed the officer make a u-turn in the road. Thereafter, Lander testified he was aware that a marked police cruiser was behind him, so he was careful not to commit any traffic violations.
 I
Initially, we must determine our standard of review in regard to a trial court's decision on a motion to suppress. When reviewing facts, the appellate court must accept the findings of the trial court as long as they are supported by competent and credible evidence. State v. Retherford (1994), 93 Ohio App.3d 586,592. However, the appellate court reviews application of the law to the facts de novo. Id. Specifically, the United States Supreme Court held that the question of whether an officer had reasonable suspicion to make an investigatory stop should be reviewed by an appellate court de novo. Ornelas v. U.S. (1996),517 U.S. 690.
To ascertain whether a traffic stop violates theFourth Amendment, we must examine the officer's actions objectively and in light of what was known to the officer at the time of the stop.Dayton v. Erickson (1996), 76 Ohio St.3d 3, 6. An officer's subjective state of mind is not relevant. Id. Specifically, the Supreme Court held:
 [W]here a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as suspicion that the violator was engaging in more nefarious criminal activity.
Id. at 11.
In Erickson, the officer ran a check on the license plate of a noisy car that drove past him, discovering that the owner of the vehicle did not have a valid driver's license. The officer saw the vehicle between fifteen and thirty minutes later and began following it. After a few moments, the officer witnessed the vehicle fail to signal a turn. At this point, the officer stopped the Oldsmobile for this minor traffic offense. During the stop, the officer learned that the driver did, in fact, have a suspended license. Id. The Ohio Supreme Court held that the officer had probable cause to stop this vehicle for the minor traffic violation, and therefore the stop was valid. Id. at 7. The officer's underlying intent or motivation was irrelevant. Id.
In the present case, Lander argues that the officers did not have reasonable suspicion to stop his vehicle. To support this argument, he urges that it is too incredible to believe that Lander would have committed any traffic violations knowing that a marked police cruiser was behind him. However, it is not incredible to believe that Lander would have attempted to elude police to avoid being stopped, as alleged by Officer Huber. As stated above, the trial court's interpretation of the facts must be accepted if they are based on competent, credible evidence.Retherford, supra. Further, it is the duty of the trial court to judge the credibility of witnesses and determine the weight to be given their testimony. State v. Wombold (Feb. 19, 1999), Montgomery App. No. 17191, unreported, p. 3, citing Seasons Coal v.Cleveland (1984), 10 Ohio St.3d 77.
Officer Huber testified that when he began pursuing Lander, he was traveling at forty to forty-five miles per hour and Lander was pulling away from him. Since he did not have a radar, he cannot be sure exactly how fast Lander was going. Additionally, running stop signs and failing to signal at turns would be consistent with an individual who is trying to elude the police. We believe there was competent and credible evidence for the trial court to adopt this interpretation of the facts.
Second, Lander relies on the fact that the turn signal and failure to stop citations were both dismissed to argue that they must not have been valid charges. This is simply not true. The later disposition of traffic citations is irrelevant as to whether or not the officer had reasonable suspicion or probable cause to stop the vehicle. See State v. Willis (May 23, 1996), Franklin App. No. 95APC11-1552, unreported. Once the officers witness a traffic violation, they have probable cause to stop the vehicle.
Finally, Lander contends that Officer Huber expressed his intent to stop him before he had committed any traffic violations. Officer Huber testified that he planned to make a stop of Lander's vehicle when he started to speed away from him on Whitmore. Lander claims that he had not committed any traffic violation at this point because his speed was not unreasonable for conditions. Lander relies on State v. Dehnke (1974), 40 Ohio App.2d 194, andState v. Rey (Feb. 4, 1991), Licking App. No. CA-3574, unreported for this proposition. Although the court in Dehnke found that a person must operate a vehicle at a reasonable speed for conditions, it further held that speed in excess of the posted speed limit is prima facie unreasonable. Dehnke, supra, syllabus. Further, in Rey, the State had decided to prosecute Rey for driving at an unreasonable speed for conditions, not a posted speed limit violation due to discrepancy in the posted speed limit. Consequently, although it is true that an individual must drive at a reasonable speed for conditions pursuant to R.C.4511.21(A), this does not give an individual permission to exceed the posted speed limit.
 However, none of this is relevant to the case. An officer must only have an articulable and reasonable suspicion that the individual is violating the law prior to effecting the stop. See Erickson, supra; Terry v. Ohio
(1968), 392 U.S. 1. By the time the officers turned on their lights and stopped Lander, Officer Huber had observed him running a stop sign and Officers Bergman and Goodwill had witnessed his failure to signal a turn twice. Whether Officer Huber had reasonable suspicion that Lander was speeding prior to this is not important to the eventual stop. The officers had witnessed Lander commit at least two traffic violations prior to the stop, and thus, the stop was valid. Accordingly, Lander's assignment of error is overruled.
Th trial court's decision overruling the motion to suppress is affirmed.
GRADY, P.J., and WOLFF J., concur.
Copies mailed to:
Todd T. Duwel
L. Patrick Mulligan
Hon. Michael Hall